<u>**AMERICAN ARBITRATION ASSOCIATION**</u>

<u>IN THE MATTER OF ARBITRATION BETWEEN</u>

Case Number: 01-23-0002-7602

Rosemary Owen,

      Claimant

-vs-

CAB EAST, LLC,

      Respondent.

<u>**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**</u>

     I, Amy Sergent, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into between the above-named parties, and having been duly sworn, and having fully reviewed the submissions of the Parties, both parties represented by counsel, do hereby ORDER as follows:

     This matter is before the Arbitrator upon each Party's fully briefed Motions for Summary Judgment.  This case involves an alleged violation of the Consumer Leasing Act ("CLA"), 15 U.S.C. 1667.  The CLA was passed in 1976 as part of the federal Truth In Lending Act with the goal of ensuring "meaningful disclosure of terms of leases of personal property," including vehicle leases.   The CLA is a strict liability statute designed to protect borrowers.  *Cox v. Porsche Fin. Services, Inc.,* 342 F. Supp. 3d at 1281.  Its provisions must be construed liberally and in favor of borrowers.  *Id.*  Full compliance with the CLA is required because "[e]ven minor violations of the Act cannot be ignored."  *Cox, supra, quoting Clement v. A,. Honda Fin. Corp.*, 145 F. Supp. 2d 206, 210 (D. Conn. 2001).  Additionally, "[a] proven violation of the disclosure requirements is presumed to injured the borrower by frustrating the purpose of permitting consumers to compare various available credit terms." *Herrera v. First Northern Sav. And Loan Ass'n,* 805 F.2d 896, 901 (10th Cir. 1986)(citing *Dzadovsky v. Lyons Ford Sales, Inc.*, 593 F.2d 538, 539 (3d. Cir. 1979)).

     Under the Consumer Leasing Act ("CLA") and its implementing regulations ("Reg. M"), a lessor must accurately and fully disclose the purchase option price before finalizing the lease. The purchase option disclosure must appear in the lease as "either a sum certain or a sum certain to be determined at a future date by reference to a readily available independent source." 12 C.F.R. § 1013.4(i)(2), Official Interpretations.

On July 27, 2019, the Claimant, Rosemary Owen, executed a Motor Vehicle Lease Agreement with Coconut Creek Lincoln for the lease of a 2019 Lincoln MKZ (hereinafter "the Vehicle"). Importantly, the Lease Agreement listed Coconut Creek Lincoln as the dealership leasing the vehicle, Lincoln Automotive Financial Services as the Finance Company servicing the lease, and CAB East as the Holder of the lease.  The Lease Agreement also specified that the term of the Lease was thirty-six (36) months, making the end of the Lease fall on July 27, 2022.  Each monthly payment of $276.34 was due on the 27th of each month. Paragraph ten (10) of the Lease Agreement contained a Purchase Option Provision which stated that at the end of the lease term,

> $20,117.95 plus official fees and taxes, and a reasonable documentary fee if allowed by law is [Claimant's] lease end purchase option price. [Claimant has] the option to purchase the vehicle at the end of the lease term from a party designated by the Holder for the purchase option price if you are not in default.

The Lease Agreement also contained an Early Termination Provision which stated:

> You may have to pay a substantial charge if you end this lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the lease is terminated. The earlier you end the lease, the greater this charge is likely to be.

On July 19, 2022 Claimant returned the Vehicle to TT of Broward, (a/k/a Lincoln of Coconut Creek), another franchised dealer, to buy the vehicle under the purchase option offered in the lease.  According to Claimant, when she went to exercise the purchase option, she was forced to pay $20,716.05 as the purchase price of the vehicle along with a $999.00 "Predelivery Service Charge and a $279.00 "Electronic Filing Fee."  She claims that Respondent failed to disclose these mandatory fees and additional amounts in the Lease's purchase option disclosure.  Plaintiff then filed this lawsuit against Respondent, CAB EAST, LLC d/b/a Ford Motor Credit Company, but not against the entity that charged the additional fees and service charge.  The Amended Complaint alleges that Respondent violated the CLA because it failed to disclose these mandatory fees and additional amounts in the Lease's purchase option disclosure, thus Respondent is strictly liable for actual damages, statutory damages, and attorney's fees and costs.  For the reasons that follow, Respondent's Motion for Summary Judgment is granted, and Claimant's Motion for Summary Judgment is denied.

## SUMMARY JUDGMENT LAW AND ANALYSIS

As an initial matter, both parties agree that the federal summary judgment standard applies. The summary judgment standard has been adequately cited by both parties in their respective motion for summary judgment.

The parties further agree that Claimant's action is brought pursuant to the Consumer Leasing Act ("CLA"), and that the purpose of the Consumer Leasing Act is to ensure 'meaningful disclosure of the terms of leases of personal property,' including vehicle leases. *McGuire v. J.G. O'Neil, Inc.*, CASE NO. 23-CV-80693-MIDDLEBROOKS, 2024 U.S. Dist. LEXIS 49510 (M.D. Fla. Mar. 19, 2024) (citing 15 U.S.C. § 1601(b)). "The CLA requires every 'lessor' to provide every 'lessee' 'clear and conspicuous' terms within their lease agreements. This includes information regarding 'whether or not the lessee has the option to purchase the leased property and at what price and time.'" Id. (citing § 1667a). To this end, the CLA defines a "Lessor" as "a person who regularly leases, offers to lease, or arranges for the lease of personal property under a consumer lease." 12 C.F.R. § 1013.2(h).

Accordingly, Claimant's suit is entirely premised on whether CAB East is a "Lessor" to begin with. If CAB East is not a "Lessor"—which CAB East contends that it was not—then the analysis ends there as any liability on CAB East would be misplaced and summary judgment in favor of Respondent would be warranted. However, if this Tribunal finds that CAB East was a Lessor, then Claimant must also establish that she was not given proper disclosures regarding applicable fees and costs related to the purchase of the Subject Vehicle.

### A. Respondent is a "Lessor" required to comply with the CLA.

Under the CLA, a "Lessor" includes a person who "arranges for the lease of personal property under a consumer lease" or "who has leased, offered, or arranged to lease personal property more than five times in the preceding calendar year or more than five times in the current calendar year…." 12 C.F.R. § 1013.2(h).

To begin with, I find there is no legitimate dispute that Respondent arranged for the lease of cars more than five times in the preceding calendar year and likely more than five times in the current calendar year. Evidence offered by Claimant (and readily available on Respondent's own website) shows that Respondent provides "financing services to customers for personal and commercial use through automotive dealers that have established relationships with us." Respondent is a subsidiary of Ford Motor Company, which "offers leasing plans to retail consumers through Ford and Lincoln brand dealers that originate the leases." Freddie Mac, Annual Report (Form 10-K), at 2.

Turning to whether or not Respondent was a "Lessor" with respect to the transaction at issue, Claimant cites to Regulation M of the CLA which offers insight as to what it means for

an entity to "arrange a lease of personal property." This requires an entity to provide or offer to provide a lease, which is or will be extended by another person under a business or other relationship pursuant to which the person arranging such lease:

>	(i) Receives or will receive a fee, compensation, or other consideration for such service; **or**

>	(ii) Has knowledge of the lease terms and participates in the preparation of the contract documents required in connection with the lease.

12 C.F.R. § 1013.2(h).

As to the first prong, although Respondent has argued that there is no evidence to show that CAB East (Ford Motor Credit) receives a fee or compensation when Coconut Creek Lincoln leases a vehicle, even from a purely commonsense standpoint, I find this argument disingenuous. Clearly, Respondent has not made itself the Holder of the lease for purely altruistic reasons. Respondent makes money from leases by originating and purchasing retail installment sale and lease contracts, and then collecting payments under those contracts, including any finance charges and interest. Ford Credit also securitizes interests in operating leases and the vehicles they relate to. ("Ford Credit's operating lease assets of $12.5 billion and $11.2 billion at December 31, 2022 and 2023…").

Turning then to the second prong, although Respondent has argued that it had no involvement in the lease transaction or disclosures, I do not find this argument particularly persuasive for several reasons. First, Respondents' Corporate Representative, Jeremy Dill, provided a deposition in which he testified that Ford Credit provides a blank Lease Agreement form for the dealership to fill out and then leaves it is up to the dealership to negotiate the numbers and the terms of the transaction with the customer. Mr. Dill testified that this lease form was provided by Respondent to CC Lincoln, and was used for all Lincoln lease agreements in July 2019. Mr. Dill further explained some of the specifics of this prearranged business agreement as follows:

>	"*our* dealerships enter into negotiations [whereby] a customer will go into a Ford dealership, pick out a car, and they're presented with various options by the dealership and they … negotiate back and forth and the dealership will fill out the forms and all that stuff and if everyone is in agreement, they will sign on the dotted line . . .

>	* * *

>	And then we [Respondent] essentially purchase that agreement … we

take on the contract that is negotiated at the dealership and we service it."

The testimony and the Leasing Agreement show that even before the Agreement was assigned to Respondent for servicing, Respondent participated in the transaction not only by preparing the contract document form, but also by approving in advance the specific financial terms of Ms. Owen's lease -- on whatever terms the dealer saw fit to negotiate. ("Lessor accepts this lease and assigns it to Holder under the terms of the lease plan agreement between Lessor and Holder"). Therefore, by its actions in both providing the template lease form and having given agency to the dealership to negotiate the specific terms of the lease agreement -- which it agreed in advance to service and finance, -- I find it far more likely than not that Respondent had sufficient knowledge of the lease terms and was sufficiently involved in the transaction to be considered a Lessor under the terms of the CLA. It should be pointed out that the term "lessor" also applies to assignees of a lease if the assignees are substantially involved in the transaction. Official Interpretations § 1013.2(h)-2; *Cox v. Porsche Fin. Servs., Inc.*, supra, 342 F.Supp.3d 1271 (S.D. Fla 2018).

Thus, viewing the evidence in the light most favorable to Claimant, I find there is sufficient evidence of record to support a finding that Respondent was a "Lessor" under the CLA, thus precluding summary judgment in favor of Respondent on this threshold issue. This conclusion notwithstanding, for the reasons that follow I find that Claimant's remaining arguments must fail and that summary judgment in favor of Respondent is appropriate and warranted.

**B. The Fees and Costs Paid by Claimant Formed Part of an Entirely Separate Agreement, not the Lease Agreement**

Count I of the Complaint is premised on the contention that the Claimant purchased the Vehicle under the Lease End Purchase Option and that she was improperly charged fees that the Lease Agreement did not disclose within the Lease End Purchase Option Provision. See Amended Complaint, ¶ 34 ("Respondent violated 12 C.F.R. § 1013.3(a) because the Purchase Option Price was unclear, inaccurate, and incomplete."). However, the dealer file produced by TT of Broward ("Lincoln of Coconut Creek") (to which Claimant so fervently objected to CAB East discovering), makes one critical fact crystal clear – Claimant did **not** exercise the Lease End Purchase Option outlined in paragraph 10 of the Lease Agreement. This conclusion is fatal to Claimant's first cause of action.

The file produced by the dealer, Lincoln of Coconut Creek, includes the Early Termination Lease Return Document, which clearly states that Claimant opted to terminate her lease early and the document contains Claimant's acknowledgment and signature. Moreover, the express terms of the Lease Agreement state that the lease did not terminate until

July 27, 2022 yet Claimant admitted that she visited the dealership and transacted the purchase on July 19, 2022. Consistent with that, all the documents from Lincoln of Coconut Creek reflect a purchase date of July 19, 2022. Consequently, it is clear that the fees allegedly charged were not charged in connection with the Lease End Purchase Option; rather, they were a part of an entirely separate purchase agreement.

This conclusion is reinforced by the Declaration from Carlos Santos, the Sales Manager at Lincoln of Coconut Creek. Mr. Santos confirms that Claimant transacted an entirely separate deal when she purchased the Vehicle on July 19, 2022.

As Mr. Santos explained, despite Lincoln Automotive Financial Services quoting a payoff amount of $20,117.95, Lincoln of Coconut Creek offered to sell Claimant the Vehicle for a different, **reduced** price of $19,717.95. Claimant accepted that offer and then opted to add multiple products and services; namely, GAP insurance for $1,499.00, an Automotive Warranty Service for $2,643.00, a Premium Exterior Appearance Protection plan for $999.00, and Tire & Wheel Hazard insurance for $755.00. None of these additional charges were disclosed in the Lease Agreement. Of course, it only makes sense that they would not be because Claimant accepted a reduced offer from Lincoln of Coconut Creek, separate from the Lease End Purchase Option of the Lease Agreement. Yet, Claimant does not address these charges anywhere in her brief(s). Instead, she endeavors to have this Tribunal believe that she is entitled to compensation as a matter of law for the dealership's charging of fees not disclosed in the Lease Agreement when, again, she did not purchase the Vehicle through the Lease End Purchase Option of the Lease Agreement to begin with.

It should be noted at this juncture that Claimant's primary argument in Response to CAB East's Motion for Summary Judgment is that she did not terminate the lease early. In support of her position, she relies on one short line from the Corporate Representative deposition wherein the Corporate Representative stated that this case "was a lease buyout." Claimant argues that this is conclusive evidence that this was a Lease End Purchase under Paragraph 10 of the Lease Agreement. She reasons that a corporate representative must be adequately prepared and that his testimony binds the corporation, citing *QBE Ins. Corp. v. Jorda Enters., Inc.*, Case No. 10-21107-CIV-GOLD/GOODMAN, 2012 U.S. Dist. LEXIS 10752 (S.D. Fla. 2012), along with other federal case law, to support this assertion.

For its part, CAB East does not dispute the general principle that a corporate representative must be prepared to testify on behalf of a corporate entity. Rather, CAB East posits, and this Arbitrator accepts, that documentation of the transaction at issue is the best evidence substantiating the facts. When considering a motion for summary judgment, a court is not required to accept as undisputed a fact that is clearly contradicted by documentary evidence. Documentary evidence, i.e., the documents that Claimant signed when she

purchased the Subject Vehicle, clearly show that this was, in fact, an early termination of the Lease Agreement. See *White v. City of Mount Vernon*, Case No. 19 Civ. 853 (NSR), 2024 U.S. Dist. LEXIS 63172, *10–11 (S.D. NY Apr. 3, 2024) (relying on documentation that casted doubt on testimony of the events in question; explaining that while courts do not generally resolve issues of fact on summary judgment, a court may set aside testimony that is clearly contradicted by documentation); *Scott v. Harris*, 550 U.S. 372, 378-81 (2007) (concluding that video, audio, or other documentary evidence can be considered on summary judgment an may be credited over an opposing account if it is so blatantly contradicted by the documentary evidence).

Claimant's assertion that this Tribunal should ignore the dealer documents because they are "business records of a self-interested third party" is astonishing. Even more confounding is Claimants argument that CAB East reliance on dealer documents essentially amounts to a "trial by ambush." As Respondent aptly points out, from the inception of this contentious suit, CAB East has continuously argued that the dealer, Lincoln of Coconut Creek, should be a party to this case. Lincoln of Coconut Creek transacted the sale of the Subject Vehicle—the transaction which forms the basis of this entire suit. Claimant chose to keep the dealer out of this suit. Claimant also fought hard to keep Respondent from subpoenaing the documents from Lincoln of Coconut Creek, arguing that the information was disproportionate to the case, and that Respondent "already knew the sum and substance of the fees charged to the Claimant so there was no need to get this information." The fact that she continues to avoid the documents that memorialized the very transaction that is at issue demonstrates that she is asking this Tribunal to ignore a significant amount of evidence to issue a judgment in her favor.

In doing so, Claimant boldly asserts that "the transaction to purchase the vehicle was not an early termination." The only shred of evidence that she cites to is a single line of testimony from the Corporate Representative's deposition—likely because there is no other evidence to establish that this was a Lease End Purchase Option transaction under paragraph 10 of the Lease Agreement. To the contrary, the documentary evidence obtained from Lincoln of Coconut Creek shows that Claimant returned her vehicle early and signed multiple "Early Termination-Lease Return" documents acknowledging that she was terminating the Lease Agreement early.

In the face of this clear evidence of early termination, Claimant attempts to blur the facts by arguing that there was no early termination because she ended the Lease closer to the scheduled termination date and because she was up to date on her Lease payments. Yet, nowhere in the Lease Agreement or in the text of the CLA does it state that an early termination can be ignored if lease payments are timely or if the lessee terminates the lease *close* to the scheduled termination date. Claimant also cites no legal authority for this argument. Ultimately, the fact that Claimant terminated the Lease Agreement early is not, as

Claimant contends, an attempt by CAB East to "distract" this Tribunal. Rather, it is a well-documented fact that is detrimental to Claimant's case.

Accordingly, I find that because Claimant did not attempt to exercise the Lease End Purchase Option but instead opted to terminate her lease early, the CLA has no bearing on this cause of action, and the Arbitrator must deny the claim as a matter of law.

### C. The Lease Agreement is Clear and Conspicuous.

In Count II of her Amended Complaint, Claimant alternatively seeks to recover damages under 12 C.F.R. Section 1013.4(g) of the CLA because the Lease Agreement did not disclose that additional charges would be required to terminate the lease early. *See* Amended Complaint, ¶ 45 ("Respondent violated 12 C.F.R. § 1013.4(g) because the Lease failed to disclose the amount or a description of the method for determining the amount of any penalty or other charge for early termination, which must be reasonable.").

I find that this cause of action is equally meritless. The CLA requires that leases contain the following with respect to early termination:

> (1) **Conditions and disclosure of charges**. A statement of the conditions under which the lessee or lessor may terminate the lease prior to the end of the lease term; and the amount or a description of the method for determining the amount of any penalty or other charge for early termination, which must be reasonable.
>
> (2) **Early termination notice**. In a motor vehicle lease, a notice substantially similar to the following: "Early Termination. You may have to pay a substantial charge if you end this lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the lease is terminated. The earlier you end the lease, the greater this charge is likely to be."

12 C.F.R. § 1013.4(g).

Here, there can be no dispute that the Lease Agreement contains the exact early termination notice required by 12 C.F.R. section 1013.4(g)(2). The Lease Agreement states: "**Early Termination**. You may have to pay a substantial charge if you end this lease early. <u>The charge may be up to several thousand dollars</u>. The actual charge will depend on when the lease is terminated. The earlier you end the lease, the greater this charge is likely to be. Furthermore, the Lease Agreement meets the requirements of 12 C.F.R. § 1013.4(g)(1). Specifically, it contains a section titled "Ending Your Lease." Paragraph 29 under that section states:

>VOLUNTARY EARLY TERMINATION AND PURCHASE THE VEHICLE. You may purchase the Vehicle from the Lessor or a party designated by the Finance Company at any time if You are not in default. If You have a Monthly Payment Lease, you must pay the following: (a) the Unpaid Adjusted Capitalized Cost, plus (b) the amount by which the lease end purchase option price (Item 10) exceeds the Residual Value (Item 7d), plus (c) official fees and taxes, plus (d) all other amounts then due under this lease. . . . You may also be charged a reasonable documentary fee if allowed by law.

In addition to that, the Lease Agreement contains a Definition of Terms Provision that further explains for the consumer some of the terms utilized in the Voluntary Early Termination Provision. This is exactly what is required under the CLA. *See Applebaum v. Nissan Motor Acceptance Corp.*, 226 F. 3d 214, 220 (3d Cir. 2000) ("[T]he CLA and Regulation M require disclosure in a form that is 'reasonably understandable' in light of the inherent difficulty or complexity of the method described; they do not necessarily demand disclosure in a form that the average consumer can understand."); *Jordan v. Toyota Motor Credit Corp.*, 236 F.3d 866, 867 (7th Cir. 2001) (explaining that Toyota's lease agreement contained two incomplete paragraphs to outline the calculation of early termination charges and that plaintiff's mathematician and person with experience in the auto industry could not determine the precise calculation based on the language of the lease; nonetheless holding that the lease was CLA compliant because it sufficiently explained the method for calculation without throwing the consumer "off the scent"); *Hildabrand v. Difeo Pshp.*, 89 F. Supp. 2d 202, 206 (Conn. Dist. Feb. 24, 2000) (granting summary judgment and denying plaintiff's claim that Honda's lease failed to disclose the cost of early termination; noting that the lease provided a formula for determining early termination costs and contained a glossary for certain terms used within that formula).

Beyond that, while not binding on the undersigned, Respondent has aptly pointed out that another AAA arbitrator has already ruled against a claimant in deciding this precise issue. In *Martin v. Doral Lincoln*, LLC, the Claimant alleged that Doral Lincoln violated CLA disclosure mandates when it charged an $898.50 Predelivery Service Charge and $189.95 as an Electronic Registration Filing Fee upon terminating his lease early and purchasing his vehicle. Notice is taken of the fact that the disclosures in Doral Lincoln's lease were the exact same disclosures that are contained in the Lease Agreement in this case—indeed both cases deal with Lincoln dealers. The arbitrator in *Martin* ruled that Doral Lincoln's lease accurately, clearly, and conspicuously disclosed "in multiple locations that additional fees and taxes, including a reasonable documentary fee, may be charged." The arbitrator further ruled that although claimant may desire that the full and complete price be disclosed in the event of an early termination, the CLA does not require such a disclosure. Furthermore, disclosing a fixed final price would not be feasible based on the lease agreement's clear and sufficient

explanation that the price may vary based on the formula provided in paragraph 29 of the lease agreement.[1]

Another point bears mention. When questioned by her attorney, Claimant initially testified that she was completely unaware that a $999.00 Predelivery Service Fee and a $279.00 Electronic Filing Fee would be charged at the time of the purchase. However, when CAB East followed up on that line of questioning, Claimant acknowledged that Lincoln of Coconut Creek did, in fact, disclose the fees at the time of the purchase. Not only were the fees disclosed, Claimant testified that she actually questioned Lincoln of Coconut Creek and challenged the costs prior to leaving the dealership. In fact, Claimant admitted that while she was at Lincoln of Coconut Creek, she considered leaving and purchasing from another dealer. In the end, she signed the purchase documents anyway and drove home in her vehicle. Claimant's knowledge and understanding of all the charges corresponding with her purchase simply cannot be refuted. Indeed, the documents clearly show that Claimant read, acknowledged, and accepted disclosures listing the charges no less than thirteen times.

Ultimately, Claimant has not presented one scintilla of evidence showing that the Lease Agreement failed to disclose that additional costs would be charged upon an early termination— nor could she. She has failed to present any evidence that the method for determining fees for an early termination was not clearly stated in the lease. And she has failed to present any evidence or testimony that the method of determining fees associated with an early termination could not be reasonably calculated by Claimant or a consumer. The documents produced by Lincoln of Coconut Creek unequivocally reflect that Claimant terminated her lease early and that she was fully apprised of the costs of so doing.

Accordingly, because the Lease Agreement and purchase documents clearly negate both counts in the Amended Complaint, and because Claimant has failed to present any evidence to establish her causes of action, this undersigned is compelled to enter summary judgment in favor of Respondent, CAB East.

Thus, based on the foregoing discussion and for the reasons set forth therein, it is the ruling of the Arbitrator that Respondent's Motion for Summary Disposition is **GRANTED** and Claimant's Motion for Summary Disposition is **DENIED**.

==The administrative fees of the American Arbitration Association totaling $2,250.00 shall==

---

[1] Notably, the *Martin* arbitrator still issued a judgment against Doral Lincoln for a legal issue that is not present in this case. Specifically, Doral Lincoln conceded that it incorrectly charged an additional $100.00 to the purchase price, and it promptly reimbursed claimant for that bona fide error. However, because the bona fide issue is not relevant to this case, this Tribunal takes guidance from the remainder of the *Martin* opinion which is nearly identical to the claims raised in this case.

==be borne as incurred, and the compensation of the arbitrator totaling $2,500.00 shall be borne as incurred.==

==This Award is in full and final settlement of all claims submitted in this Arbitration. All claims not expressly granted herein are hereby denied.==

<u>/es/  Amy L. Sergent</u>

Amy L. Sergent, Arbitrator

Dated this 27th day of August, 2024.